Christopher J. Berry, Esq. – #015385
**BERRY LAW GROUP, PLLC**
1850 N. Central Ave., Suite 1025
Phoenix, Arizona 85004
Telephone: (602) 462-1141
Facsimile: (602) 462-1151
cberry@berrylawgroup.com
admin@berrylawgroup.com

*Attorneys for Defendant Maricopa County*
*CHS Defendants, Struble and Crutchfield*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edmon Yohannes, et al., | Case No.  CV-24-02087-PHX-ROS (CDB) |
| Plaintiffs, | **DEFENDANT VICTOR GAN'S** |
| v. | **MOTION TO DISMISS** |
| State of Arizona, et al., | |
| Defendants. | |

Defendant Victor Gan, MD files this Motion to Dismiss the claims that Plaintiffs have asserted against him in Counts Two and Five of their Complaint (Doc. 63).  This motion is brought pursuant to F. R. Civ. P. 12(b)(6).  Dr. Gan was not involved with the care of Remon Yohannes in October 2023.  Plaintiffs' claims against Dr. Gan are based solely upon the allegation that Dr. Gan charted incorrect information about Mr. Yohannes in a booking four years prior to his October 2023 booking.  That information was not known or relied upon in October 2023 and had no causal connection to the treatment and death of Mr. Yohannes.  Charting that information also cannot be the basis of a claim that Dr. Gan would reasonably know that he was creating an unreasonable risk of harm to Mr. Yohannes for the purposes of Plaintiffs' gross negligence claim.  Finally, the complaint alleges no facts related to Dr. Gan that would describe how he violated any right of Mr.

BERRY LAW GROUP
PLLC
ATTORNEYS AT LAW

1  Yohannes or how his acts or omissions caused Mr. Yohannes' Fourteenth or Eighth

2  Amendment rights to be violated.

3      This Motion is supported by the following Memorandum of Points and Authorities

4  and its references to the Complaint in this matter.

5          **MEMORANDUM OF POINTS AND AUTHORITIES**

6      Plaintiffs allege three separate counts against Dr Gan.  Plaintiffs' Count One states

7  that it is for wrongful death under A.R.S. §12-611 and A.R.S. §14-3110.  A.R.S §12-611.

8  A.R.S. § 12-611, however, does not create a separate and distinct cause of action.  It

9  merely enables the proper plaintiff to bring a wrongful death claim based upon

10 recognized theories of liability.  With respect to Dr. Gan, those theories of recovery are

11 stated in Counts Two and Four of the Complaint.  Plaintiffs' Count Two is for gross

12 negligence of public employee brought under the Arizona Wrongful Death Statute

13 (A.R.S. §12-611).  Plaintiffs' Count Four is for cruel and unusual punishment in violation

14 of the Eighth and Fourteenth Amendments brought pursuant to 28 U.S.C §1983.  Neither

15 of these counts state an actionable claim for relief against Dr. Gan that satisfies F. R. Civ.

16 P. 12(b)(6).

17     Dr. Gan is sued in this lawsuit in both his official and individual capacities.

18     *19.  VICTOR GAN ("Gan") was at all relevant times employed with CHS and*
   *Maricopa and was acting as an agent of CHS and Maricopa. Gan is sued in his official*

19 *and individual capacity.*

20     The section of the Complaint dealing with "Individual Liability" states that each

21 of the CHS Defendants is sued in his or her personal capacity because:

22     345. Each and every one of them had the opportunity to provide
       medical care to Remon.

23

24     346. As discussed herein, they all either saw him personally or entered
       medical notes in his records.

25

26

BERRY LAW GROUP
PLLC
ATTORNEYS AT LAW

-2-

BERRY LAW GROUP
PLLC
ATTORNEYS AT LAW

## STANDARDS FOR CONSIDERATION OF A MOTION TO DISMISS

As recently stated in *Gerow v. United States DOJ*, No. CV-23-01059-PHX-DGC, 2024 U.S. Dist. LEXIS 6585, at 7-8 (D. Ariz. Jan. 12, 2024), a Complaint that sets forth a cognizable legal theory will survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). The Complaint's factual allegations are taken as true and construed in the light most favorable to the plaintiff. *See Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A Complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 559. A Complaint may be dismissed "based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

## FACTUAL ALLEGATIONS OF DR. GAN'S PARTICIPATION AND CONDUCT.

The Complaint makes the following factual allegations against Dr. Gan.  As the Court can see, these allegations relate to the second component of Plaintiffs' theory of individual liability on the part of CHS staff: that Dr. Gan entered medical notes in Mr. Yohannes's chart.  The allegations all pertain to some entries that Dr. Gan made in Mr. Yohannes's medical records during a June 2019 booking.  Plaintiffs allege that these entries are incorrect.  The Complaint otherwise fails to connect how or why these entries from over four years earlier, in one of Mr. Yohannes's 19 other jail bookings, had any bearing on Mr. Yohannes's treatment in October 2023.  The allegations about Dr. Gan are few enough to quote as follows:

BERRY LAW GROUP
PLLC
ATTORNEYS AT LAW

135. Medical professionals at MCSO and CHS had previously tried to hide the fact that Remon was a type one (1) diabetic despite having full records showing so.

136. On June 24, 2019, Dr. Victor Gan even wrote that - *while Remon was afflicted with DKA* - that "This is NOT DKA, px does not have type 1 DM".

137. In fact, Remon had been afflicted with DKA and sent to the ER a total of ***five times*** while under ADOC's, MCSO's, and CHS' care.

138. Remon's records are full of medication entries that Remon took.

139. On June 24, 2019, the same Victor Gan who inexplicably stated that Remon was not suffering from DKA, the very same day, entered drug orders for Remon for Lantus Subcutaneous ... 100 UNIT/ML".

140. He ordered a quantity of 20 to be given once in the evening daily.

141. According to MedLinePlus.gov, Lantus is Insulin Glargine- yfgn.

142. Victor Gan also ordered Regular Insulin Sliding Scale treatments for Remon - something that is reserved typically for type one (1) diabetics and only for severely /critically ill type two (2) patients.

338. Victor Gan, MD is upon information and belief an assistant medical director of the ITR jail.

339. He is charged with reviewing medical records for continuity of care and ensuring that his staff does the same. He is responsible for ensuring - not just under the Hippocratic Oath - that patients are treated with dignity and do no harm to his patients.

340. He failed utterly in his duties to do no harm, leading directly to the failure to provide desperately needed medical care to Remon, a type one (1) diabetic.

341. His objectively unreasonable and recklessly indifferent actions can be seen for years with notes in Remon's medical history and led directly to Remon's death.

The Complaint allegations basically acknowledge that Dr. Gan did not participate in any aspect of Mr. Yohannes's care in October 2023, because he did not.  Plaintiffs

1    allege only that in June 2019, Dr. Gan charted that Mr. Yohannes was not a true type I

2    diabetic, that he prescribed Lantus for Mr. Yohannes which was a diabetic medication,

3    and that he ordered a regular insulin sliding scale.  This is the sum total of Dr. Gan's

4    participation in this matter other than the non-specific allegation that Dr. Gan is

5    responsible as the assistant medical director of CHS for making sure that records are

6    reviewed for continuity and that patients are cared for and with dignity.

7         Plaintiffs are asserting that Dr. Gan charted that Mr. Yohannes was not a Type I

8    diabetic, which they allege to be incorrect.  Plaintiffs seem to infer, but do not allege, that

9    somehow that incorrect information was passed on via Mr. Yohannes's medical records

10   and was relied upon by staff in October 2023, causing them to treat Mr. Yohannes

11   incorrectly at that time.  However, nowhere in the Complaint do Plaintiffs allege that any

12   CHS staff members relied in October 2023 upon the information that Dr. Gan charted in

13   2019.  In fact, the opposite is alleged.  Throughout their Complaint, Plaintiffs allege that

14   CHS staff either did not review Mr. Yohannes's past medical records for continuity of

15   care or reviewed them but did not note his diabetes.  See ¶¶ 170-73, 179, 236, 340, 396

16   & 421.  The Complaint is also clear in its allegations that Mr. Yohannes disclosed that

17   he was a Type I diabetic (¶¶ 162-65 & 296), that this fact appeared in his intake

18   assessment (¶¶ 162 & 169), that he advised staff he was diabetic (¶¶ 162, 165 & 321),

19   and that staff put in orders for certain diabetic treatment but did not timely act on that

20   information or provide care (¶¶ 321& 329-341).  Taking these allegations as true for the

21   purposes of this Motion, the Court must accept that CHS knew or should have known

22   that Mr. Yohannes was a Type I diabetic.  The Court must also accept the allegation that

23   CHS staff did not review Mr. Yohannes's prior medical records for continuity of care

24   because this is what Plaintiffs allege (¶¶ 236, 340 & 396), so CHS staff would not have

25   seen any note that Dr. Gan had made in a record four years earlier indicating that Mr.

26   Yohannes was a Type II rather than Type I diabetic.  CHS staff therefore could not have

relied upon Dr. Gan's 2019 chart entries, nor could staff have been influenced by these entries in terms of how they treated Mr. Yohannes.

On a plain reading of the Complaint that assumes Plaintiffs' allegations to be true, there is no way that Dr. Gan could have caused or contributed to Mr. Yohannes's injuries by noting in his medical records four years earlier that Mr. Yohannes's diabetes was not Type I. The Complaint does not allege any other theory of relief against Dr. Gan. It does not allege that he was involved with Mr. Yohannes's medical care in October 2023. It does not allege that Dr. Gan charted anything in Remin's record related to the October 2023 booking. These were the two stated bases for CHS staff liability: having the opportunity to provide care or charting information in his file. The only specific acts of Dr. Gan that are referred to in the Complaint are his entries four years prior in a medical record from a different booking that was not reviewed in October 2023. This is not a sufficient basis to state a claim against Dr. Gan under the circumstances alleged in this 408 paragraph Complaint.

Both of Plaintiff's Counts against Dr. Gan fail to state a claim upon which relief can be granted and should be dismissed pursuant to Rule 12(b)(6).[1]

### COUNT TWO: GROSS NEGLIGENCE.

Count Two of Plaintiffs' Complaint is for gross negligence. The basis of this count is as follows:

417. As alleged herein, the CHS Defendants, Maricopa, Penzone, and MCSO Defendants failed Remon in the simplest of tasks – ensuring his safety and ensuring his medical conditions were being properly treated. As alleged herein, Remon was virtually ignored by MCSO staff and his medical concerns were completely ignored by CHS staff, all of which contributed to and caused Remon's wrongful death.

---

[1] Plaintiffs' Count One states that it is for wrongful death under A.R.S. §12-611 and A.R.S. §14-3110. A.R.S §12-611. A.R.S. § 12-611, however, does not create a separate and distinct cause of action. It merely enables the proper plaintiff to bring a wrongful death claim based upon recognized theories of liability

1

2

418. These Defendants, while acting as agents and employees for MCSO, Penzone, Maricopa, and CHS owed a duty to Remon to perform their responsibilities to provide custody, care, and control of Remon.

3

4

419. These Defendants, while acting as agents and employees for MCSO, Penzone, Maricopa, and CHS, owed duties to Remon to act objectively reasonably under the circumstances.

5

6

7

420. These Defendants' failure to provide security and medical attention to Remon constitutes recklessness and/or gross negligence for which the Defendants are individually liable.

8

9

10

11

421. The CHS Defendants' conduct, in providing medical care that grossly fell below the standard of care - failing to check medical record continuity, failing to provide life-saving medication despite having full knowledge of Remon's medical conditions, and actively feeding Remon Gatorade - constitutes negligence and gross negligence for which the Individual Defendants are individually liable.

12

To state for gross negligence Plaintiffs must allege facts showing the defendant

13

failed to act when he or she had "reason to know facts which would lead a reasonable

14

person to realize that his or her conduct not only creates an unreasonable risk of bodily

15

harm to others but also involves a high probability that substantial harm will result.

16

*Gerow v. United States DOJ*, No. CV-23-01059-PHX-DGC, 2024 U.S. Dist. LEXIS

17

6585, at *13 (D. Ariz. Jan. 12, 2024) (citing *Walls v. Ariz. Dep't of Pub. Safety*, 170 Ariz.

18

591, 826 P.2d 1217, 1221 (Ariz. Ct. App. 1991). Gross negligence is "action or inaction

19

with reckless indifference to the safety of others." *Williams v. Thude*, 180 Ariz. 531, 539,

20

885 P.2d 1096 (App. 1994). It "is highly potent, and when it is present it fairly proclaims

21

itself in no uncertain terms. It is 'in the air,' so to speak. It is flagrant and evinces a lawless

22

and destructive spirit." *Cullison v. City of Peoria*, 120 Ariz. 165, 169, 584 P.2d 1156

23

(1978).

24

As Judge Campbell noted in *Gerow v. United States DOJ*, No. CV-23-01059-

25

PHX-DGC, 2024 U.S. Dist. LEXIS 6585, at *13 (D. Ariz. Jan. 12, 2024), when the

26

plaintiff does not identify what actions of the defendants were grossly negligent, or when

BERRY LAW GROUP
PLLC
ATTORNEYS AT LAW

1    plaintiff does not allege facts suggesting that a reasonable person would have known

2    defendant's actions created a high probability of substantial harm, then the plaintiff's

3    claim for gross negligence will be dismissed.  *Id.*

4        Here, Plaintiffs' allegations against Dr. Gan do not identify what facts would lead

5    him to realize that his conduct created an unreasonable risk of harm to Mr. Yohannes.

6    The Complaint does not allege that Dr. Gan knew or had reason to know any such facts.

7    Accepting for the sake of this motion that Dr. Gan incorrectly charted that Mr. Yohannes

8    was not a Type I diabetic, the Complaint alleges that no one reviewed Mr. Yohannes's

9    records from past medical bookings.  It also states, "Continuity medical records showed

10   CHS Defendants and MCSO Defendants that Mr. Yohannes was a type one (1) diabetic."

11   ¶ 438.  This makes it impossible that Dr. Gan's alleged charting mistake could have

12   created a high probability of substantial harm to Mr. Yohannes.  Plaintiffs' Count Two

13   against Dr. Gann must therefore be dismissed for failure to state acclaim pursuant to Rule

14   12(b)(6).

15   **COUNT FOUR. 28 U.S.C. 1983, Violation of the Eighth and Fourteenth Amendments'**
     **prohibition against Cruel and Unusual Punishment.**

16       Fairly summarized, Paragraphs 435 through 444 of the Complaint state that the

17   Fourteenth Amendment protected Mr. Yohannes from constitutional violations by state

18   and local authorities and the Eighth Amendment protected him from cruel and unusual

19   punishment.  ¶ 436.  CHS and MCSO staff knew from Mr. Yohannes's medical records

20   and his presentation at the jail that he was a Type 1 diabetic who posed a serious health

21   risk.  ¶¶ 437-38.  CHS and MCSO then failed to monitor Mr. Yohannes or provide him

22   with medication when reasonable officers would have done so, ignoring the risk of harm

23   to him and causing his death through neglect and gross negligence.  ¶¶ 439-44.

24       The factual allegations of what Dr. Gan did in this matter do not connect him in

25   any way to Plaintiffs' civil rights claim under the Eighth and Fourteenth Amendments.

26   Dr. Gan is accused of a charting error that happened four years before Mr. Yohannes's

BERRY LAW GROUP
PLLC
ATTORNEYS AT LAW

1   October 2023 booking.  When those facts are assumed true and are added to the statement

2   of Plaintiffs' Count Four, it is clear that Plaintiffs have not stated a cognizable civil rights

3   cause of action against Dr. Gan, because nothing in the Complaint links the alleged

4   wrongful conduct of Dr. Gan to how Plaintiffs alleged Mr. Yohannes's Eighth and

5   Fourteenth Amendment rights were violated.

6       In a § 1983 action, the plaintiff must also demonstrate that the defendant's conduct

7   was the actionable cause of the claimed injury."  *Bearchild v. Cobban*, 947 F.3d 1130,

8   1150 (9th Cir. 2020) (quoting *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th

9   Cir. 2008)).  "To meet this causation requirement, the plaintiff must establish both

10  causation-in-fact and proximate causation."  *Id.*  A defendant's conduct is an "actual

11  cause," or "cause-in-fact," of a plaintiff's injury only if the injury would not have occurred

12  but for that conduct.  Chaudhry v. Aragon, 68 F.4th 1161, 1170 n.11 (9th Cir. 2023).  In

13  this case, there are no allegations that would create a causal link between the conduct of

14  Dr. Gan as alleged and Mr. Yohannes's treatment and death over four years later.

15      Plaintiffs Complaint tends to lump all the CHS defendants together and binds them

16  with broad general allegations of liability alleged to apply to each.  This is not an

17  appropriate tactic for pleading an actionable civil rights claim, and the claims against Dr.

18  Gan illustrate the defects inherent in this tactic and the difficulties that it causes.  In a

19  civil rights lawsuit, the inquiry into causation must be individualized and focus on the

20  duties and responsibilities of each individual defendant whose acts or omissions are

21  alleged to have caused a constitutional deprivation."  *Leer v. Murphy*, 844 F.2d 628, 633

22  (9th Cir. 1988 appropriate in this case, Dr. Gan's conduct in charting an alleged mistake

23  in 2019 is strained through the same over-generalized expression of how CHS defendants

24  violated Mr. Yohannes's civil rights as the conduct of the nurses and staff who actually

25  spoke with and treated Mr. Yohannes during his October 2023 booking.  Consequently,

26

the statement from Plaintiffs' Count Four reads as though it is inapplicable to Dr. Gan: leaving the Court to speculate as to how Dr. Gan would fit into claim as articulated.

Plaintiffs' Count Four against Dr. Gan fails to state the duties and obligations or responsibilities individualized to his role in this lawsuit. It also fails to identify any theory as to how his particular conduct or actions caused the constitutional violation at issue. The is virtually no way the Court can discern from this Complaint ho the alleged constitutional violations would not have occurred but for Dr. Gan's conduct or actions. *See Chaudhry v. Aragon*, 68 F.4th 1161, 1170 n.11 (9th Cir. 2023). The claim therefore must be dismissed for failure to state a claim under Rule 12(b)(6).

### COUNT FIVE, BATTERY AND SURVIVAL ACTION<br>PURSUANT TO A.R.S. §12-542 AND A.R.S. §14-3310

Plaintiffs' Count Six is for common law battery. It alleges simply that the CHS Defendants intentionally fed Mr. Yohannes Gatorade causing harmful or offensive contact which resulted in his death. Dr. Gan is included in Plaintiffs' grouping on "CHS Defendants", so Count Six is alleged against him. A review of the Complaint accepting Plaintiffs' allegations as true shows that Dr. Gan cannot be liable for common law battery. Plaintiffs' allegations against Dr. Gan are that he incorrectly charted in June 2019 that Mr. Yohannes was not a Type I Diabetic. Plaintiff also suggest some vague supervisory liability allegations against Dr. Gan. Plaintiffs do not, however, allege that Dr. Gan ever had any contact with Mr. Yohannes in October 2023, or that he was on duty that day or was in any way involved with Mr. Yohannes's 2023 care and treatment.

To establish a battery claim, a plaintiff must prove that the defendant intentionally caused a harmful or offensive contact with the plaintiff to occur. *Johnson v. Pankratz,* 196 Ariz. 621, 623, 2 P.3d 1266, 1268 (Ct. App. 2000) (citing Restatement (Second) of Torts § 13 (1965). Plaintiffs have not alleged any act or omission on the part of Dr. Gan that could amount to an intentional harmful or offensive contact with Mr. Yohannes, nor could such an allegation be made under the facts and circumstances alleged in the

-10-

Complaint. Count Six against Dr. Gan must therefore be dismissed or failure to state a claim.

### CONCLUSION

For the reasons set forth on this Motion, Plaintiffs' claims against Dr. Gan should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Dr. Gan was not involved with Mr. Yohannes' treatment and care in October 2023. The only allegation of specific conduct that Plaintiffs make against Dr. Gan accuse him of documenting incorrect information in Mr. Yohannes file in June 2019, four years before Mr. Yohannes was seen in October 2023. The Compliant itself alleges that no CHS staff relied upon or even knew about this or any chart entry at the time Mr. Yohannes was seen in October 2023. All other references to Dr. Gan are merely conclusory allegations without factual support. The Complaint fails to state any legally cognizable claims against Dr. Gan. It also fails to plead facts sufficient to support the claims that it attempts to state against Dr. Gan.

### CERTIFICATION PURSUANT TO L.R.CIV. 12.1(c)

Undersigned counsel for Defendant Victor Gan, MD certifies to the Court that before filing this Motion, he met and conferred with counsel for Plaintiffs by e-mail and telephone regarding the bases on which Defendant Victor Gan, MD would be seeking to dismiss the Complaint. The parties were unable to agree that the Complaint was curable in any part by a permissible amended at this time.

**RESPECTFULLY SUBMITED** this 22nd day of November 2024.

**BERRY LAW GROUP, PLLC**


By:    /s/ Christopher J. Berry
Christopher J. Berry, Esq.
*Attorneys for Defendants Maricopa County*
*CHS Defendants, Struble and Crutchfield*

BERRY LAW GROUP
PLLC
ATTORNEYS AT LAW

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2024, I caused the foregoing document to be electronically transmitted to the Clerk's Office using CM/ECF System for filing and served on counsel of record via the Court's CM/ECF system

Sean A. Woods
Robert T. Mills
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Ste 101
Phoenix, Arizona 85014
swoods@millsandwoods.com
docket@millsandwoods.com
*Attorneys for Plaintiff*

Kim Chamberlain
Charles Trullinger
**MARICOPA COUNTY ATTORNEY – CIVIL SERVICES DIVISION**
225 West Madison Street
Phoenix, Arizona 85003
Kim.Chamberlain@mcao.maricopa.gov
trullinc@mcao.maricopa.gov
ca-civilmailbox@mcao.maricopa.gov
*Attorneys for Paul Penzone*

Jody C. Corbett
**OFFICE OF THE CITY ATTORNEY**
200 W. Washington, Suite 1300
Phoenix, Arizona 85003-1611
Law.civil.minute.entries@phoenix.gov
*Attorney for City of Phoenix*

James Jellison
**JELLISON & ROBENS, PLLC**
18801 N. Thompson Peak Parkway, Ste D235
Scottsdale, AZ 85255
jim@jrlawaz.com
*Attorney for Robin Avalos*

-12-

Pari K. Scroggin
**GRASSO LAW FIRM**
3075 W. Ray Road, Suite 110
Chandler, AZ 85226
pscroggin@grassolawfirm.com
*Attorneys for Building Blocks Counseling, LLC*


By:  /s/ Maria Elena Garcia