Robert T. Mills (Arizona Bar #018853)
Sean A. Woods (Arizona Bar #028930)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Edmon Yohannes, as Personal Representative and on behalf of The Estate of Remon Yohannes; and, Tesfai Haggmana,<br><br>Plaintiffs,<br><br>vs.<br><br>State of Arizona, a governmental entity; Maricopa County, a governmental entity; City of Phoenix, a governmental entity; David Crutchfield and Jane Doe Crutchfield, a married couple; Lisa Struble and John Doe Struble, a married couple; Michael Sullivan, Chief of the Phoenix Police Department; Paul Penzone, Maricopa County Sheriff; Pamela Conn and John Doe Conn, a married couple; Victor Gan and Jane Doe Gan, a married couple; Michael Chailland and Jane Doe Chailland, a married couple; Lashon Arrington and John Doe Arrington, a married couple; Miranda Sanders and John Doe Sanders, a married couple; Brent Williams and Jane Doe Williams, a married couple; Jannis Mossman and John Doe Mossman, a married couple; Bryant Ball and Jane Doe Ball, a married couple; Robin Avalos and John Doe Avalos, a married couple; Audaine Rintala and John Doe Rintala, a married couple; Andrew Fairfield and Jane Doe Fairfield, a married | No.: CV-24-02087-PHX-ROS (CDB)<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO ARRINGTON MOTION TO DISMISS**<br><br>(Assigned to the Honorable Roslyn O. Silver and referred to the Honorable Magistrate Camille D. Bibles for all pretrial proceedings) |

couple; Michelle Martin and John Doe Martin, a married couple; Mary Daugomah and John Doe Daugomah; Mark Guerra and Jane Doe Guerra, a married couple; Yesenia Sambrano and John Doe Sambrano, a married couple; Julie Stevens and John Doe Stevens, a married couple; Sira Hodge and John Doe Hodge, a married couple; Christi Trevett and John Doe Trevett, a married couple; Cynthia Wright and John Doe Wright, a married couple; Allison Slaton and John Doe Slaton, a married couple; Michael Villegas and Jane Doe Villegas, a married couple; Building Blocks Counseling, LLC d/b/a Axiom Care, an Arizona limited liability company; John and Jane Does I-X,

Defendants.

Through undersigned counsel, Plaintiffs hereby respond in opposition to Defendant Lashon Arrington's ("Arrington's") Motion to Dismiss Plaintiffs' First Amended Complaint (the "MTD"), as contained in the "Consolidated Motions to Dismiss of CHS Defendants Arrington, Fairfield, Martin, Trevett, and Wright" filed by Defendants LaShon Arrington, Michelle Martin, Christie Trevett, Andrew Fairfield, and Cynthia Wright (collectively, the "CHS Defendants"). This Response is supported by the Memorandum of Points and Authorities below and the relevant parts of the record in this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   STANDARD OF REVIEW

"[T]o survive a motion to dismiss, a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556

2

U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1144-45 (citation omitted).

When resolving a motion to dismiss, a Court must accept as true all factual allegations in the complaint and construe those allegations, as well as the reasonable inferences that can be drawn from them, in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Further, in the context of a motion to dismiss, the court properly resolves any doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

The probability of success at trial should not be considered, as "a well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (internal citation omitted). Facts pled are assumed to be true, as "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Id.* "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Consequently, motions to dismiss are disfavored and are to be granted only if there is no cognizable factual or legal basis for the claim.

## II. ARGUMENT

Arrington argues that Plaintiffs' claims against him for gross negligence, and cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments and U.S.C. § 1983, should be dismissed for failure to state a claim[1]. Arrington is wrong. Viewing the allegations of the FAC, and all reasonable inferences therefrom, in a light most favorable to Plaintiffs, as the Court must do at this stage, those claims are sufficiently pled.

With respect to the first claim, a party is grossly or wantonly negligent if he acts, or fails to act, when he knows or has reason to know facts which would lead a reasonable person to realize that his conduct not only creates an unreasonable risk of bodily harm to others, but also involves a high probability that substantial harm will result. *Walls v. Ariz. Dept. of Public Safety*, 170 Ariz. 591, 595 (App. 1991); *see also Badia v. City of Casa Grande*, 195 Ariz. 349, 356-57 (App. 1999). Gross negligence is "action or inaction with reckless indifference to the safety of others." *Williams v. Thude*, 180 Ariz. 531, 539 (App. 1994).

With respect to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments and U.S.C. § 1983, "claims for violations of the right to adequate medical care 'brought by pretrial detainees against individual defendants under the Fourteenth Amendment' must be evaluated under an ***objective*** deliberate indifference standard." *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (emphasis added) (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016)).

---

[1] Arrington also argues that Plaintiffs' battery claim against him should be dismissed for failure to state a claim. Plaintiffs agree that the battery count as to Arrington should be dismissed and his inclusion in that count was an oversight/typographic error by Plaintiffs.

4

Accordingly,

> the elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1125.  "'With respect to the third element, the defendant's conduct must be ***objectively*** unreasonable, a test that will necessarily "turn[ ] on the facts and circumstances of each particular case."'"  *Id.* (emphasis added) (quoting *Castro*, 833 F.3d at 1071).  "Thus, the plaintiff must 'prove more than negligence but ***less than subjective intent*** — something akin to reckless disregard.'"  *Id.* (emphasis added) (quoting *Castro*, 833 F.3d at 1071).  As the foregoing makes clear, when stating a cruel and unusual punishment claim in the case of a ***pretrial*** detainee like decedent Remon Yohannes ("Remon"), the defendant's actual, subjective, intent, is irrelevant.  Instead, such a claim is evaluated under the far less burdensome standard of whether a ***reasonable*** person in the defendant's circumstances would have acted differently.

Here, as alleged in the First Amended Complaint (the "FAC"), Remon's medical history records at CHS showed he was a type 1 diabetic and that CHS had regularly treated him for that condition.  FAC ¶¶ 130-31.  Moreover, they showed that he "had suffered from Diabetic Ketoacidosis ("DKA") on multiple occasions. . . . a life-threatening complication of diabetes . . . ."  Importantly, "Remon was displaying a majority of DKA symptoms ***as soon as the Phoenix Police had taken him to the ITR*** on October 12, 2023."  FAC ¶ 237

5

(emphasis added). "He was in severe distress due to having extreme diabetic symptoms, including lethargy, disorientation, intense pain, thirst, dehydration, disorientation, and nausea, among other things." FAC ¶ 118. His intake records noted that he suffered from a medical condition. *See* FAC ¶ 125.

In addition, "Arrington[] . . . w[as] charged with the medical care of Remon," and "had the opportunity to provide medical care to [him]." FAC ¶¶ 344-45. Despite that duty and opportunity, "Arrington [falsely] wrote that at 7:00:00 A.M. on October 14, 2023, Remon refused his medications." FAC ¶¶ 198-99. This was false because "[t]he video record from October 14, 2023, shows Remon was in his cell on his bunk from 6:54 A.M. until 8:19 A.M.," and "[n]obody [ ] came to the cell or spoke to Remon between those times. *See* FAC ¶¶ 200-03. In other words, Arrington, despite his record entry and his charge to provide medical care to him, never personally checked in on Remon at 7 a.m.

This was dereliction of duty on Arrington's part, because only two and a half hours after he failed to check in on him Remon collapsed to the floor in his cell. *See* FAC ¶¶ 213-14. When CHS personnel came to check on him at that time, they recorded his blood sugar level at "340, which is extremely and dangerously high." FAC ¶ 220. At that time, Remon's DKA symptoms "had [now] ramped up to nearly uncontrollable . . . ." FAC ¶ 237. He was "confused," "dehydrated," "in severe pain," "extremely thirsty," "vomiting repeatedly," "having trouble breathing," "had markedly decreased alertness," and, worst of all, "had begun falling into a DKA coma." FAC ¶¶ 238-45. Remon never recovered from that coma, and he passed away at 11:11 p.m. the very next day "after no treatments could bring him back from [it]." FAC ¶ 311. Had Arrington, in accordance with his duty and

6

contrary to his false chart entry, reviewed Remon's medical file and actually checked on him, "it would have been abundantly clear [to him] that Remon had already been in the throes of [DKA] [ ] – signs that he had been displaying since his arrival at Fourth Avenue." *See* FAC ¶ 236.

As a result of the foregoing, Plaintiffs allege that: "[Arrington], individually, and under the color of law failed to provide Remon the care he desperately needed," FAC ¶ 348; "[Arrington's] actions and inactions were unreasonable and recklessly indifferent in regards to providing this care to Remon," FAC ¶ 349; "[a]n objective observer would have looked at Remon's records, his symptoms, and his vitals and knew that he needed diabetic care," FAC ¶ 350; "[a]n objective observer would be appalled at the actions and inactions taken by [Arrington]," FAC ¶ 351, and that; "[Arrington's] actions and inactions led directly to the death of Remon [ ]," FAC ¶ 352.

In sum, Arrington failed to personally check on Remon (and lied about doing so) when Arrington had reason to know Remon was a type 1 diabetic with a history of DKA who had already displayed symptoms of that very dangerous condition since his intake. This failure to act was a contributing cause of Remon's death, because had Arrington personally checked on him at that time he would surely have noticed the dramatic worsening of Remon's DKA symptoms, symptoms that were not seen or recognized by staff until another two and a half hours had passed.  This satisfies the requirements for pleading gross negligence, in that Arrington knew or should have known facts that would have led a reasonable person in his position to realize that his conduct not only created an unreasonable risk of bodily harm to Remon, but also involved a high probability that

substantial harm would result to him – i.e., he was recklessly indifferent to Remon's safety. *See Walls*, *Badia*, and *Williams*, *supra*. Moreover, it satisfies the requirements for pleading cruel and unusual punishment, in that: Arrington made an intentional decision with regard to the conditions of Remon's confinement that put Remon at substantial risk of suffering serious harm; he did not take reasonable measures to abate that risk, though a reasonable person in his shoes would have; he lied about having interaction with Remon, and; this decision was a cause of Remon's ultimate death. *See Gordon* and *Castro*, *supra*.

### III.  CONCLUSION

For all the foregoing reasons, the Court should deny the MTD in part, and decline to dismiss Plaintiffs' claims against Arrington for gross negligence and cruel and unusual punishment.

**RESPECTFULLY SUBMITTED** this 13th day of December 2024.

**MILLS + WOODS LAW, PLLC**

By  /s/ Sean A. Woods
      Robert T. Mills
      Sean A. Woods
      5055 North 12th Street, Suite 101
      Phoenix, AZ 85014
      *Attorneys for Plaintiffs*

8

# CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2024, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Christopher J. Berry
cberry@berrylawgroup.com
**BERRY LAW GROUP, PLLC**
admin@berrylawgroup.com
1850 N Central Ave., Ste. 1025
Phoenix, AZ 85004
*Attorneys for Defendant Maricopa County and CHS Defendants*

Kim Chamberlain
kim.chamberlain@mcao.maricopa.gov
andrea.moreno@mcao.maricopa.gov
judith.ezeh@mcao.maricopa.gov
Charles Trullinger
trullinc@mcao.maricopa.gov
loucksd@mcao.maricopa.gov
shinabad@mcao.maricopa.gov
**MARICOPA COUNTY ATTORNEY**
Civil Services Division
ca-civilmailbox@mcao.maricopa.gov
225 W Madison St.
Phoenix, AZ 85003
*Attorneys for Defendants Paul Penzone, Sheriff Russell Skinner, D.O. Sanders, D.O. Williams, D.O. Mossman, and D.O. Ball*

Robert Grasso, Jr.
rgrasso@grassolawfirm.com
jgarcia@grassolawfirm.com
Pari K. Scroggin
pscroggin@grassolawfirm.com
dross@grassolawfirm.com
**GRASSO LAW FIRM, P.C.**
minuteentries@grassolawfirm.com
3075 W Ray Rd., Ste. 110
Chandler, AZ 85226
*Attorneys for Defendant Building Blocks Counseling, LLC d/b/a Axiom Care, Sara Zavala, Deanna Moore and Kellee Zambrano*

*/s/ Ben Dangerfield*

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556