1  Christopher J. Berry, Esq. – #015385
   **BERRY LAW GROUP, PLLC**
2  1850 N. Central Ave., Suite 1025
   Phoenix, Arizona 85004
3  Telephone: (602) 462-1141
   Facsimile: (602) 462-1151
4  cberry@berrylawgroup.com
   admin@berrylawgroup.com
5  *Attorneys for Defendant Maricopa County*

6

7                    IN THE UNITED STATES DISTRICT COURT

8                         FOR THE DISTRICT OF ARIZONA

9  Edmon Yohannes, et al.,            | Case No. 2:24-cv-02087-PHX-ROS (CDB)
10                                     |
                    Plaintiffs,        | **DEFENDANT ARRINGTON'S REPLY
11     v.                              | IN SUPPORT OF CHS DEFENDANTS
                                       | MOTION TO DISMISS**
12 State of Arizona, et al.,           |
13                                     |
                    Defendants.        |
14

15         Defendant LaShon Arrington submits this Reply in Support of his Motion to

16  Dismiss (Doc. 71). Plaintiffs' Response in Opposition to Mr. Arrington's Motion does

17  not dispute that Mr. Arrington had nothing to do with the care of Mr. Yohannes.

18  Plaintiffs' argue in response that their First Amended Complaint (Doc. 63) ("FAC")

19  asserts that if Mr. Arrington had made his medication rounds to Mr. Yohannes cell as

20  reported, then he would have seen Mr. Yohannes and administered or ordered care. Even

21  if the Court accepted that the boiler plate allegations Plaintiffs' assert in their FAC against

22  all CHS defendants can be construed to support this theory, the theory itself is fatally

23  flawed. The FAC clearly alleges that Mr. Arrington never saw Mr. Yohannes, so Mr.

24  Arrington could not have had "reason to know facts which would lead a reasonable

25  person to realize that his conduct creates an unreasonable risk of harm to Mr. Yohannes

26  involving a high probability that substantial harm will result. *Gerow v. United States*

-1-

*DOJ*, No. CV-23-01059-PHX-DGC, 2024 U.S. Dist. LEXIS 6585, at *13 (D. Ariz. Jan. 12, 2024) (citing *Walls v. Ariz. Dep't of Pub. Safety*, 170 Ariz. 591, 826 P.2d 1217, 1221 (Ariz. Ct. App. 1991). Similarly, Mr. Arrington had no information about Mr. Yohannes' condition of which he could have been deliberately indifferent.

Plaintiffs' allege that Mr. Arrington was supposed to administer withdrawal medications to Mr. Yohannes between Mr. Yohannes' first man down treatment at approximately 9:00 a.m. (FAC, Doc. 63, at ¶198 et. seq.) and his second man down at approximately2:30 pm. FAC, Doc. 63 at ¶258 et. seq.). According to the FAC, Mr. Arrington charted that he tried to give Mr. Yohannes his medications at 7 a.m. but Mr. Yohannes refused to get up to take them. FAC, Doc. 63 at ¶198. The FAC alleges that Mr. Arrington cannot be seen on video surveillance footage attempting to give any medications to Mr. Yohannes. FAC, Doc. 63 at ¶¶199-203. Therefore, according to the FAC, Mr. Arrington must have been lying when he charted that he attempted to give Mr. Yohannes his withdrawal medications. Defendants dispute this version of what occurred, but note that on a motion to dismiss this Court must accept these allegations as true. This would establish that Mr. Arrington charting that he tried to give Mr. Yohannes his withdrawal medications but failed to do so, and that he lied about that. It does not, however, allege an actionable theory of causation.

The administration of Mr. Yohannes withdrawal medications has nothing to do with the cause of his death. The FAC does not allege that Mr. Yohannes condition was caused or worsened by a lack of withdrawal medications. The FAC does not allege that Mr. Yohannes died in whole or in part because he did not receive his withdrawal medications. The FAC is very clear that the failure to treat Mr. Yohannes' diabetic condition with insulin is what caused his death. FAC, Doc. 63 at ¶¶222, 228, 250, 324, 340, & 441. Thus, the act of not giving Mr. Yohanes withdrawal medication, no matter how sinister it is alleged, did not cause or contribute to his death; and certainly not at a

1 level sufficient to satisfy the high standards of gross negligence and deliberate 2 indifference at issue here. Similarly, the act of lying about whether medications were 3 offered is also irrelevant to causation in this case. The FAC does not allege that this 4 deception had any impact on M. Yohannes care or on the conduct or knowledge of others. 5 It is at best a misdeed with no actual impact.

6 Plaintiffs' Response attempts to stretch their allegations against Mr. Arrington by 7 reaching into the boilerplate allegations that Plaintiffs make against all CHS Defendants 8 to construct a more broad theory against Mr. Arrington than that he incorrectly charted 9 that Mr. Yohannes refused his withdrawal medications. Plaintiffs are now arguing that 10 Mr. Arrington's role was not simply handing out medications and charting, but that he 11 had some overriding general duty to assess Mr. Yohannes and direct treatment based 12 upon that assessment. Plaintiffs rely on their paragraphs stating broad and sweeping 13 duties and responsibilities of "the CHS Defendants" that would apply to each person with 14 equal scope whether they be a doctor or a technician making drug rounds.

15 The theory stated in Response is that Mr. Arrington said he tried to give 16 medications when he did not, and if he had actually tried to give medications, he would 17 have seen that Mr. Yohannes was in need of some type of further or other medical care. 18 Response, Doc. 85 at 7, ll. 16-24. This theory is not actually plead in the FAC. It is 19 cobbled together from allegations that do not address or identify specific actions on the 20 part of Mr. Arrington. Assuming that those paragraphs could be read to support that 21 theory, these allegations are vague conjecture and mere conclusory statements that do not 22 relate to the specific actions or inactions of Mr. Arrington, and the Court "does not have 23 to accept as true conclusory allegations in a complaint or legal claims asserted in the form 24 of factual allegations. *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016).

25 Plaintiffs' theory as articulated in their Response is implausible on its face for two 26 reasons.

First, it can be accepted as true that Mr. Arrington would have seen a sick individual if he went to Mr. Yohannes' cell. Plaintiffs' allegation that this would have caused Mr. Arrington to independently assess Mr. Yohannes and intervene in or direct his care, however, is mere conjecture. Mr. Arrington was giving Mr. Yohannes medications because Mr. Yohannes was already known to be quite ill as is alleged throughout the FAC. Mr. Yohannes' condition therefore would have been what Mr. Arrington reasonably would have expected it to be. It is therefore improbable conjecture at best that Mr. Arrington would have assessed Mr. Yohannes for something more than his opiate withdrawal illness and intervened in his care in some way, and the Court is not bound to accept as true allegations that are mere conjecture. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)("[T]he court [is not] required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

Secondly, accepting as true that Mr. Arrington did not go to the cell to deliver medications to Mr. Yohannes, then Mr. Arington necessarily did not see Mr. Yohannes, and therefore Mr. Arrington did not observe anything about Mr. Yohannes' condition. Mr. Arrington could not have formed an opinion, nor been able to form an opinion, about whether Mr. Yohannes needed other treatment or emergency medical intervention. It is impossible, therefore for Mr. Arrington to have understood that Mr. Yohannes needed medical attention and to consciously disregard that fact for the purposes of gross negligence or in order to be deliberately indifferent for the purposes of the Eighth and Fourteenth Amendments. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018). The allegations must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868

(2009). When the Court accepts as true that Mr. Arrington did not see Mr. Yohannes, then Plaintiffs' claims for gross negligence and violations of Mr. Yohannes' Eighth and Fourteenth Amendment rights are necessarily implausible. Nether standard can be satisfied under the allegations of the FAC, because Mr. Arrington is alleged to have not seen Mr. Yohannes at all, and therefore he could not have consciously subjected him to the risk of diabetic ketoacidosis as alleged in the FAC.

## I. Conclusion

Mr. Arrington requests that the Court dismiss Plaintiffs' claims against him for failure to state a claim under Fed. R. Civ. P. 12(b)(6) & 8(a)(2). The FAC only specifically accuses Mr. Arrington of improperly charting that he Mr. Yohannes refused his withdrawal medications. Plaintiffs have tried to stretch their theory of recovery by relying on non-specific conclusory allegations that they plead against all CHS Defendants, but they cannot escape the simple pleading defect that accepting as true that Mr. Arrington did not see Mr. Yohannes, he could not have acted with the requisite gross negligence and deliberate indifference culpability. Mr. Arington therefore respectfully requests that the Court dismiss Plaintiff's FAC against him.

**RESPECTFULLY SUBMITTED** this 20th day of December, 2024.

**BERRY LAW GROUP, PLLC**

By: /s/ Christopher J. Berry
Christopher J. Berry, Esq.
***Attorneys for Defendant Maricopa County***

# CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2024, I caused the foregoing document to be electronically transmitted to the Clerk's Office using CM/ECF System for filing and served on counsel of record via the Court's CM/ECF system

Sean A. Woods
Robert T. Mills
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Ste 101
Phoenix, Arizona 85014
swoods@millsandwoods.com
docket@millsandwoods.com
*Attorneys for Plaintiff*

Kim Chamberlain
Charles Trullinger
**MARICOPA COUNTY ATTORNEY – CIVIL SERVICES DIVISION**
225 West Madison Street
Phoenix, Arizona 85003
Kim.Chamberlain@mcao.maricopa.gov
trullinc@mcao.maricopa.gov
ca-civilmailbox@mcao.maricopa.gov
*Attorneys for Paul Penzone*

Jody C. Corbett
**OFFICE OF THE CITY ATTORNEY**
200 W. Washington, Suite 1300
Phoenix, Arizona 85003-1611
Law.civil.minute.entries@phoenix.gov
*Attorney for City of Phoenix*

James Jellison
**JELLISON & ROBENS, PLLC**
18801 N. Thompson Peak Parkway, Ste D235
Scottsdale, AZ 85255
jim@jrlawaz.com
*Attorney for Robin Avalos*

1  Pari K. Scroggin
2  **GRASSO LAW FIRM**
   3075 W. Ray Road, Suite 110
3  Chandler, AZ 85226
   pscroggin@grassolawfirm.com
4  *Attorneys for Building Blocks Counseling, LLC*

5

6  By:  /s/ Maria Elena Garcia