KAB

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edmon Yohannes, as personal representative and on behalf of the estate of Remon Yohannes, et al., <br><br> Plaintiffs, <br><br> v. <br><br> State of Arizona, et al., <br><br> Defendants. | No. CV-24-02087-PHX-ROS (CDB) <br><br> **ORDER** |

Plaintiffs Edmon Yohannes, as personal representative and on behalf of the estate of Remon Yohannes (Remon), and Tesfai Haggmana, who are represented by counsel, brought this action against numerous Defendants. Defendant Arrington[1] moves to dismiss the claims alleged against him (Doc. 71), and Plaintiffs oppose the Motion (Doc. 85).

**I.    First Amended Complaint**[2]

In their First Amended Complaint, Plaintiffs relevantly allege as follows. At all times relevant to this action, Defendant Arrington was an employee of Correctional Health Services (CHS) providing healthcare to detainees in the Maricopa County Jails. (Doc. 63.)

---

[1] The Motion was also filed on behalf of Defendants Michelle Martin, Christie Trevett, Andrew Fairfield, and Cynthia Wright, but those Defendants have since been dismissed. (*See* Doc. 87.)

[2] For the purposes of this Order, the Court only include allegations relevant to Plaintiffs' claims against Defendant Arrington.

In October 2023, Remon was 30 years-old, had Type-1 diabetes, and was insulin dependent. (*Id.*) On prior occasions, while in Maricopa County Sheriff's Office (MCSO) custody, Remon had multiple instances of Diabetic Ketoacidosis (DKA), an emergency health condition that, if left untreated, can lead to death. (*Id.*) On October 12, 2023, Remon was stopped by police because they "witnessed" Remon with a tube in his mouth with smoke billowing from it and he was arrested; Remon was taken into custody due to an outstanding parole violation warrant and was booked on additional charges. (*Id.*) Remon was taken to MCSO's Fourth Avenue Jail and presented in severe distress due to diabetic symptoms, including lethargy, disorientation, intense pain, thirst, dehydration, disorientation, and nausea. (*Id.*) Remon's vitals, including his blood sugar were checked, but he was provided no medical treatment. (*Id.*) Prior MCSO and CHS records reflected that Remon was insulin dependent and had suffered from DKA while in custody on multiple occasions. (*Id.*)

On October 13, 2023 at 7:22 p.m., Remon was placed in a holding cell and was transferred to another holding cell at 8:06 p.m. (*Id.*) On the way to the other cell, Remon was leaning against walls for support and spent the night writhing in pain and repeatedly vomiting. (*Id.*)

Defendant Arrington wrote that at 7:00 a.m. on October 14, 2023, he tried to give Remon his medications, but Remon refused. (*Id.*) This was a false entry as Remon was in his cell from 6:54 a.m. to 8:19 a.m. and no one from medical visited him. (*Id.*) Remon's medical records contained multiple false entries falsely indicating that Remon refused his medications. (*Id.*) Arrington's failure to check on Remon and his reckless indifference to Remon's serious medical needs prevented Remon from receiving timely medical care. (*Id.*) At 9:24 a.m., Remon collapsed on his cell floor, and at 9:28 a.m., a blood sugar check revealed Remon's blood sugar level to be 340, which is extremely and dangerously high. (*Id.*) Responding medical staff then gave Remon Gatorade, which worsened his condition even though Remon repeatedly reported that he has Type 1 diabetes and needed to be treated. (*Id.*) At 1:55 p.m., Remon collapsed again and other detainees started calling for

1  guards. (*Id.*) Between 1:59 p.m. and 2:36 p.m. staff attempted CPR on Remon while black liquid poured from his mouth, a sign of internal bleeding. (*Id.*) Phoenix Fire then transferred Remon to the hospital where Remon's glucose level was 512 and he was septic, indicating late-stage DKA. (*Id.*) Remon died on October 15, 2023 at 11:11 p.m.

In the First Amended Complaint, Plaintiffs alleges a wrongful death claim (Count One), a gross negligence claim (Count Two), a Fourteenth and Eighth Amendment claim for failure to provide constitutionally adequate medical care (Count Four), and a state-law battery claim (Count Six) against Defendant Arrington. (*Id.*)

**II.    Motion to Dismiss**

In his Motion to Dismiss, Defendant Arrington argues that Plaintiffs fail to state a claim against him because Plaintiffs do not allege that Arrington ever saw or treated Remon and even if Arrington failed to give Remon the opiate medication,[3] that is not causally connected to how Remon died.

In Response, Plaintiffs concede that the battery claim asserted against Arrington should be dismissed (Doc. 85 at 4 n.1) but argue that they have stated claims for reckless indifference to serious medical needs and gross negligence. Plaintiffs assert that the following allegations support their claim against Arrington:

Remon's medical history records at CHS showed he was a type 1 diabetic and that CHS had regularly treated him for that condition, Remon had suffered from Diabetic Ketoacidosis (DKA) (a life-threatening complication of diabetes) on multiple occasions, Remon was displaying a majority of DKA symptoms as soon as the Phoenix Police took him to MCSO's Intake, Transfer, and Release Jail on October 12, 2023 at which point, he was in severe distress due to having extreme diabetic symptoms, including lethargy, disorientation, intense pain, thirst, dehydration, disorientation, and nausea, among other things, and his intake records noted that he suffered from a medical condition. (Doc. 85 at

---

[3] Plaintiffs do not allege that Arrington failed to provide Remon opiate medication, but allege that Arrington failed to check on Remon and created a false medical records entry indicating that Remon refused all "medications." (*See* Doc. 63 at 20-21.)

- 3 -

5-6.) Arrington was responsible for Remon's medical care and had the duty to provide medical care to Remon, but Arrington did not check on Remon and instead falsified a chart record indicating that at 7:00 a.m. on October 14, 2023, Remon refused his medications. (*Id.* at 6.) Only two and a half hours after Arrington failed to check in on Remon, Remon collapsed to the floor in his cell. (*Id.*) When CHS personnel came to check on Remon, they recorded his blood sugar level at 340, which is extremely and dangerously high and Remon was "confused," "dehydrated," "in severe pain," "extremely thirsty," "vomiting repeatedly," "having trouble breathing," "had markedly decreased alertness," and "had begun falling into a DKA coma." (*Id.*) Remon never recovered from that coma, and he passed away at 11:11 p.m. the next day. (*Id.*) Had Arrington, in accordance with his duty and contrary to his false chart entry, reviewed Remon's medical file and actually checked on him, it would have been abundantly clear to him that Remon was exhibiting signs of DKA—signs that he had been displaying since his arrival at Fourth Avenue. (*Id.* at 6-7.)

Plaintiffs assert that their allegations plead gross negligence because they show Arrington knew or should have known facts that would have led a reasonable person in Arrington's position to realize that his conduct not only created an unreasonable risk of bodily harm to Remon, but also involved a high probability that substantial harm would result to him—i.e., he was recklessly indifferent to Remon's safety. (*Id.* at 7-8.) Plaintiffs assert that their allegations plead violations of the Eighth and Fourteenth Amendments because they show "Arrington made an intentional decision with regard to the conditions of Remon's confinement that put Remon at substantial risk of suffering serious harm; he did not take reasonable measures to abate that risk, though a reasonable person in his shoes would have; he lied about having interaction with Remon, and; this decision was a cause of Remon's ultimate death." (*Id.* at 8.)

In Reply, Arrington asserts that Plaintiffs rely on allegations made against all Defendants to support their claims against Arrington, but because Arrington never saw Remon, he "could not have had reason to know facts which would lead a reasonable person to realize that his conduct creates an unreasonable risk of harm to [Remon] involving a

high probability that substantial harm will result [and] Arrington had no information about [Remon's] condition of which [sic] he could have been deliberately indifferent." (Doc. 86 at 1-2.)

### A. Legal Standards

#### 1. 12(b)(6)

Dismissal of a complaint, or any claim within it, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)). In determining whether a complaint states a claim under this standard, the allegations in the complaint are taken as true and the pleadings are construed in the light most favorable to the nonmovant. *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation omitted). To survive a motion to dismiss, a complaint must state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

#### 2. Medical Care

##### i. Proper Standard

As an initial matter, Plaintiffs cite both the Eighth Amendment and Fourteenth Amendment for their constitutional claim. In the briefing on the Motion to Dismiss, Defendants do not argue a particular legal standard and, in their Response to the Motion to Dismiss, Plaintiffs cite the Fourteenth Amendment legal standard. Whether Remon was a

"convicted inmate" or a "pretrial detainee" makes a difference as to whether his § 1983 claims arise under the Cruel and Unusual Punishment Clause of the Eighth Amendment or under the Due Process Clause of the Fourteenth Amendment. There is a significant split of authority in the Ninth Circuit as to whether a medical care claim brought by a person detained for a parole violation arises under the Fourteenth Amendment or the Eighth Amendment. *Compare Flores v. Cnty. of Fresno*, No. 119CV01477DADBAM, 2020 WL 4339825, at *3 (E.D. Cal. July 28, 2020); *Nordenstrom for Est. of Perry v. Corizon Health, Inc.*, No. 3:18-CV-01754-HZ, 2021 WL 2546275, at *7 (D. Or. June 18, 2021); *Trehearne v. Huggett*, No. 2:24-CV-1896 KJM CSK P, 2025 WL 553358, at *3 (E.D. Cal. Feb. 19, 2025) (cases finding Eighth Amendment standard applies) *with Hanington v. Multnomah Cnty.*, 593 F. Supp. 3d 1022, 1032 (D. Or. 2022); *Christie v. Dep't of Corrs.*, No. 3:22-CV-05692-TMC, 2024 WL 3939287, at *6–7 (W.D. Wash. Aug. 26, 2024); *Bowman v. LV Metro. Police Dep't*, No. 2:22-CV-01481-ART-NJK, 2024 WL 3875946, at *5 (D. Nev. Aug. 19, 2024) (cases finding Fourteenth Amendment standard applies).

District courts finding that such a claim arises under the Eighth Amendment generally rely on an unpublished Ninth Circuit case from 1997. *See, e.g.*, *Trehearne v. Huggett*, No. 2:24-CV-1896 KJM CSK P, 2025 WL 553358, at *3 (E.D. Cal. Feb. 19, 2025) (citing cases). Other district courts finding that it arises under the Fourteenth Amendment rely on Ninth Circuit cases treating those in detention for probation violations as Fourteenth Amendment claims, with one Court noting that the Supreme Court has held that there is no difference between probation and parole violations for purposes of due process. *See, e.g.*, *Hanington v. Multnomah Cnty.*, 593 F. Supp. 3d 1022, 1032 (D. Or. 2022) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973)).

Indeed, the majority of courts in the Ninth Circuit have found that the Fourteenth Amendment's analysis applies to a person detained on a suspected probation violation while out of custody and the only Ninth Circuit case to address the issue has found the Fourteenth Amendment applies. *See Rosenblum v. Blackstone*, No. SA CV 18-966-JVS(E), 2020 WL 1049916, at *10 (C.D. Cal. Jan. 22, 2020) (citing cases discussing

whether Fourteenth Amendment or Eighth Amendment should apply to claims regarding jail condition when person was incarcerated due to ongoing probation violation proceedings); *Davies v. Espinda*, No. CV 20-00174 DKW-RT, 2020 WL 4340939, at *2 (D. Haw. July 28, 2020) ("Because Plaintiff is awaiting a decision on the revocation of probation, the Court reviews his claims under the Fourteenth rather than the Eighth Amendment." ); *Felix Espinoza, et al. v. Cnty. of Orange, et al.*, No. 8:24-CV-02120-AH (DFMX), 2025 WL 1090391, at *3 (C.D. Cal. Mar. 13, 2025) ("Most courts in the Ninth Circuit to address this issue have found that the Fourteenth Amendment applies to a person detained on an unadjudicated or suspected probation or supervised release violation, including the only Ninth Circuit case, which applied the Fourteenth Amendment.").

Here, because the Parties have not adequately briefed the issue and the outcome may be determined by facts relating to the charges that were pending against Remon for which he was detained and/or to the process given for the parole violation and when such process occurred, the Court will apply the Fourteenth Amendment standard.

### ii. Fourteenth Amendment

The Ninth Circuit Court of Appeals has held that "claims for violations of the right to adequate medical care 'brought by pretrial detainees against individual defendants under the Fourteenth Amendment' must be evaluated under an objective deliberate indifference standard." *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (quoting *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016)). To state a medical care claim, a pretrial detainee must show

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1125. "With respect to the third element, the defendant's conduct must be objectively

unreasonable, a test that will necessarily 'turn[] on the facts and circumstances of each particular case.'" *Castro*, 833 F.3d at 1071 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015); *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

The "'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Castro*, 833 F.3d at 1071 (quoting *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)). A plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.*

### 3. Gross Negligence

To establish negligence under Arizona law, a plaintiff must show four elements: "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007) (internal citations omitted). "To be grossly negligent, the actor's conduct must create an unreasonable risk of physical harm to another, and such risk must be substantially greater than the risk involved in ordinary negligence." *Rourk v. State*, 821 P.2d 273, 280 (Ariz. Ct. App. 1991) (citing *Kemp v. Pinal Cnty.*, 474 P.2d 840, 843 (1970) (quoting *Restatement (Second) of Torts* § 500)).

### B. Discussion

Plaintiffs adequately allege Fourteenth Amendment medical care and gross negligence claims against Defendant Arrington. Defendant Arrington is alleged to have made intentional decisions not to check on Remon and to falsely indicate in Remon's medical records that he had been checked on and had refused his medications. Based on the allegations in the First Amended Complaint, those decisions placed Remon at substantial risk of suffering serious harm, Defendant did not abate the risk, but rather falsified records, which could have worsened the risk, and could have contributed to a worsening of Remon's injuries. Falsifying records indicating that a seriously ill detainee was checked on and was refusing medications could have created an unreasonable risk of serious harm to Remon. Defendant Arrington argues that his actions did not contribute to

Remon's death, but causation is necessarily a fact-specific question that cannot be decided at this stage of the proceedings. It is certainly plausible that Arrington's decision not to check on Remon, a seriously ill detainee, and to instead falsify medical records indicating that Remon had been checked on and was refusing medications contributed to Remon's decompensation. Accordingly, Plaintiffs have stated claims upon which relief may be granted against Defendant Arrington, and the Motion to Dismiss will be denied as to the Fourteenth Amendment medical care claim and the gross negligence claim.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendant Arrington's Motion to Dismiss (Doc. 71).

(2) Defendant Arrington's Motion to Dismiss is **granted in part and denied in part** as follows:

    (a) The Motion is **granted** as to the battery claim in Count Six, and Count Six is **dismissed** as to Defendant Arrington.

    (b) The Motion is otherwise **denied**.

Dated this 14th day of May, 2025.

Honorable Roslyn O. Silver
Senior United States District Judge